UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:18-CR-20685-KMW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRANCISCO CONVIT GURUCEAGA,

*et al*.,

    Defendants,

v.

BRITESTAR WORLDWIDE LTD.,
CORP., and SKYE INVESTMENT
AND FIELD CONSTRUCTION CORP.

    Third-Party Petitioners.

_____/

**BRITESTAR WORLDWIDE LTD. CORP. AND SKYE INVESTMENT AND FIELD CONSTRUCTION CORP.'S THIRD-PARTY PETITION AND MEMORANDUM IN SUPPORT OF INTEREST IN REAL PROPERTY SUBJECT TO FORFEITURE**

On August 16, 2018, a federal grand jury in the Southern District of Florida returned an Indictment charging the named defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), substantive counts of money laundering in violation of 18 U.S.C. § 1956, and substantive counts of interstate and foreign travel in aid of racketeering in violation of 18 U.S.C. § 1952. (ECF No. 19.) The Indictment also alleged that certain specific property was subject to forfeiture.

On August 17, 2018, the government filed notices of *lis pendens* encumbering those properties. ( ECF No.'s 36, 43.)  The notices of *lis pendens* do not provide the government's rationale for encumbering the properties, properties the Third-Party Petitioners own in their entirety.

## I.   THIRD-PARTY PETITION

Third-Party Petitioners ask the Court to adjudicate their rightful interests in the following:

1. The "Prado Property" located at 6905 Prado Blvd., Coral Gables, FL 33143, which was purchased on or about November 3, 2011;

2. The "Isla Dorada Property" located at 194 Isla Dorada, Coral Gables, FL 33143, which was purchased on or about April 29, 2014;

3. The "Icon Property," Unit 619 in Icon Brickell Condominiums, 465 Brickell Ave., Miami, FL 33131, which was purchased on or about January 28, 2015; and

4. The "Casuarina Property" located at 655 Casuarina Concourse, Coral Gables, FL 33143, which was purchased on or about March 17, 2015. [1]

The Government prematurely and incorrectly classified the Properties as potential substitute assets. Third-Party Petitioners therefore request that the Court exclude the Properties from the class of assets subject to forfeiture in satisfaction of any judgement entered against the named defendants, including but not limited to Mario Enrique Bonilla Vallera.[2]

## II.   FACTUAL BACKGROUND

On August 16, 2018, Fernando Valero Gutiérrez ("Valero") died unexpectedly in a skydiving accident. Prior to his death, Valero was a businessman, who built a successful jewelry business that sold high-end jewelry in stores located in Caracas, Venezuela, Bogotá, Colombia, and Miami, Florida. Valero used the proceeds from his business to purchase the Properties through two companies, Britestar Worldwide Ltd. Corp. ("Britestar") and Skye Investment and Field

---

[1] This petition refers to the four properties, collectively, as "the Properties."

[2] Third-Party Petitioners do not have access to discovery provided in this case but, based on communications with government counsel, believe the government intends to base its claim to the Properties as substitute assets on any conviction that it may obtain against the eighth named defendant, Mario Enrique Bonilla Vallera ("Bonilla").

Construction Corp. ("Skye Investment"). Britestar owns the Prado Property, the Icon Property, and the Casuarina Property. Skye Investment owns the Isla Dorada Property. Neither the named defendants nor any business entity with which any of them is associated has held an interest of any kind in the Properties. Furthermore, there is no evidence that Valero purchased the Properties with laundered money derived from criminal activity or that the Properties were used to facilitate a crime.

To the contrary, history tells a story markedly different. Valero, who came from humble means, was born in Caracas, Venezuela on May 16, 1976, built a successful jewelry store business in Caracas, and thereafter expanded to Bogotá and Miami. Through his hard work and business acumen, he was able to secure valuable distributor contracts, including an exclusive contract with Patek Philippe, a maker of luxury watches. Like many enterprising people in Latin America, by 2009 or 2010, Valero began purchasing real estate in South Florida for himself and his family.

The first home Valero purchased in South Florida was a modest residence located in Aventura, a working-class neighborhood in Miami, populated by a tightly-knit Venezuelan community. Valero brought his wife and children house-hunting and to various closings. His family celebrated the holidays at the Aventura home, and Valero showed understandable pride in his accomplishment in securing the safe second home.

In a short time, Valero sold that Aventura home and used the proceeds to purchase a condominium in a mixed residential and commercial development. Not an expert in South Florida's real estate market, Valero relied on a fellow national and purchased the condominium from a Venezuelan acquaintance, Raúl Gorrín, well known in the community.

As his business jewelry business grew, Valero was able to purchase a single-family residence. He retained a real estate broker, Eduardo Martínez ("Martínez"), who was also well-

known in the community. Martínez showed Valero and his family multiple properties. After looking at several, they chose the Prado Property. Valero then employed Cosme J. de la Torriente, a real estate attorney who was also well known and respected in the community, to handle the legal aspects of the transactions.

None of this story of gradual upsizing – with the wife and children closely involved – is consistent with money laundering. Moreover, Valero did not pay cash for the Prado Property, the first single family residence. He financed a large part of the purchase with a jumbo mortgage issued by BAC Florida Bank (in excess of $1,350,000.00.)[3]

Then Valero embarked on significant and extensive remodeling, indicating of course that he had a personal interest in the property and wanted to refurbish it to suit his personal tastes despite the fact that remodeling did not raise the fair market value of the home.

Throughout 2012, Valero's business continued to expand. Meanwhile, his family enjoyed visiting South Florida. And as economic conditions in his home country deteriorated and more Venezuelans moved their businesses to Florida, Valero decided to expand to Miami. His real estate agent, Martínez, located retail space in the Design District, and Valero signed a lease and undertook a lavish and ultimately unwise, remodeling project for the leased retail space.

Around this same time, Valero looked for a nicer single-family residence. His real estate broker located the Isla Dorada Property.

Approximately nine months later, as his business improved, Valero purchased a downtown condominium in the Icon Brickell. Finally, a couple months later, Valero purchased the Casuarina Property. Valero was not able to secure financing through BAC Florida, however, evidently because of the debt associated with the Prado Property and remodeling the store in the Design

---

[3] BAC Florida Bank, 1 Corporate Drive, Ste. 360, Lake Zurich, IL 60047-8945.

District. Instead, he secured financing, at an above-market rate, from a private lender that provided real estate loans in Florida.

Third-Party Petitioners do not dispute that some of Valero's customers had ties to government officials as a consequence of his luxury jewelry business and ties to the Venezuelan community in South Florida. But Valero was aware of no regulation requiring him to conduct background checks on his customers or to confirm the source of funds used by his customers to purchase merchandise.

### III.   MEMORANDUM OF LAW

The Properties are not subject to forfeiture under Title 21, which only authorizes forfeiture of property of a defendant convicted of a crime.  In light of the true ownership of the Properties, the sources of funds, Valero's personal family narrative, and the narrative of the purchase transactions, the government cannot make a sufficiently solid case showing that the Properties are subject to forfeiture as Bonilla's or any other defendant's "substitute property." Consequently, Third-Party Petitioners ask the Court to exclude the Properties from the list of assets potentially subject to forfeiture.

**A.  Britestar and Skye Investments Are Innocent Third Parties.**

The Properties are not subject to forfeiture under the statute, which only authorizes forfeiture of "property of the defendant[.]" 21 U.S.C. § 853(p)(2) (emphasis added); *see also* Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000) (observing that "criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited"); *United States v. Bailey*, 926 F. Supp. 2d 739, 764 (W.D.N.C. 2013) (noting that the primary remedial purpose underlying criminal forfeiture is "to punish the defendant and to disgorge him of his ill-gotten gains"); *In Re Moffitt, Zwerling & Kemler*, 864 F. Supp. 527, 535-36 (E.D.Va. 1994)

(holding that § 853(p) "plainly states that it applies only to the defendant"); *In Re Moffitt, Zwerling & Kemler*, 875 F. Supp. 1152, 1162 (E.D. Va. 1995) ("Criminal forfeiture of substitute assets is available against a defendant but not against a third party.")

Here, the Properties are owned by Britestar and Skye Investment, which in turn are owned by Silva. Notably absent from the lengthy Indictment is any suggestion that Bonilla or any other defendant in this case had any beneficial or direct ownership interest. To allow forfeiture of a third-party's property due to a *de minimis* financial connection to a defendant in criminal proceedings would result in an unfair and unjust expansion of the statute. Although 21 U.S.C. § 853(o) provides that the statute should be construed liberally to effectuate its purpose, that purpose is to punish the *defendant*. It follows that "the statute should be construed *narrowly* when it is being interpreted in any manner that does not serve to punish the Defendant." *See Bailey*, 926 F. Supp. 2d at 764 (emphasis added). Appropriately construing the statute along these lines, the Court should remove the Properties from the list of assets subject to forfeiture. *See id.* (concluding that third-party properties were not subject to forfeiture because the third-party petitioners established legal title to the properties, refuted only by the defendant's self-serving plea agreement).

**B. The Properties are not Subject to Forfeiture because Britestar and Skye Investment were Bona Fide Purchasers for Value.**

Alternatively, the Properties are not subject to forfeiture because Britestar and Skye Investment were reasonably without cause to believe that any funds used to purchase the Properties were subject to forfeiture. "[S]tate law determines the nature of a claimant's interest in forfeited property." *United States v. Suarez*, 716 F. App'x 937, 938 (11th Cir. 2018). "Under Florida law, to be a bona fide purchaser, the purchaser must have '(1) acquired legal title to the property in question, (2) paid value therefore, and (3) been innocent of knowledge of the equity against the property at the time when consideration was paid and title acquired.' " *Id.* (quoting *DGG Dev.*

*Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1234 (Fla. 5th DCA 2008)).

The facts here are similar to the ones presented in *United States v. Coffman*, 997 F. Supp. 2d 677, 689 (E.D. Ky. 2014), *aff'd*, 612 F. App'x 278 (6th Cir. 2015). The Government sought forfeiture of a condominium owned by a defendant's relative because the relative had borrowed $151,000.00 from the defendant's wife's company to purchase the condominium. The court found that the third-party relative was a bona fide purchaser and excluded the condominium from the forfeiture order because (i) she had executed a mortgage granting the defendant's wife's company a secured interest in the condominium, (ii) she had made payments on the note from her income and her husband's income, (iii) she did not become aware of the defendant's illegal conduct until months after purchasing the condominium, (iv) she believed the defendant and his wife's wealth came from "wise investments" and a "prosperous" career as an attorney, and (v) she intended the condominium to serve as the primary residence for her and her husband. *Id.* at 688-89. The same result should apply here. The Government cannot tie the Properties to any criminal activity.

## IV. CONCLUSION

Based on the foregoing, Third-Party Petitioners hereby petition to have the Court remove the Properties from the list of assets subject to forfeiture in this criminal matter. Moreover, the Court should award the petitioner attorneys' fees pursuant to 28 U.S.C. § 2412(d)(1)(A) because the Government's premature action encumbering the Properties was not substantially justified.

January 16, 2020.

- 8 -

        Respectfully Submitted,

        GREGOR | WYNNE, PLLC

Of Counsel:

| | |
|---|---|
| */s/ Robert D. W. Landon, III* | */s/ Michael J. Wynne\** |
| Robert D. W. Landon, III | Michael J. Wynne |
| Fla. Bar No. 961272 | Texas State Bar No. 00785289 |
| KENNY NACHWALTER, P.A. | SDTX No. 0018569 |
| 1441 Brickell Avenue | 909 Fannin Street, Suite 3800 |
| Suite 1100 | Houston, TX 77010 |
| Miami, Florida 33131 | Direct: (281) 450-7403 |
| Telephone: (305) 373-1000 | Fax: (713) 759-9555 |
| Facsimile: (305) 372-1861 | mwynne@gcfirm.com |
| rlandon@knpa.com | |

*\*Pro hac vice admission pending*

Attorneys for Third-Party Petitioners Britestar Worldwide Ltd., Corp. and Skye Investment and Field Construction Corp.

## **CERTIFICATE OF SERVICE**

I certify that on January 16, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF, causing a copy to be served on counsel of record participating in the CM/ECF system. I further certify I mailed the foregoing document and the notice of electronic filing by first-class mail to any non- CM/ECF participants noted on the attached service list.

 */s/ Robert D. W. Landon, III*
Robert D. W. Landon, III

## SERVICE LIST

*United States of America v. Francisco Convit Guruceaga, et al., v. Britestar Worldwide, LTD. Corp, Skye Investment and Field Construction Corp.*

Case No.: 1:18-CR-20685-KMW

**Francisco Raul Maderal, Jr.**
UNITED STATES ATTORNEY'S OFFICE
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

**Nalina Sombuntham**
99 N.E. 4th Street
Miami, FL 33132

**Sandra L. Moser**
U.S. DEPARTMENT OF JUSTICE
Criminal Division, Fraud Section
1400 New York Ave NW, Room 3204
Washington, DC 20005

**Michael Brian Nadler**
ASSISTANT UNITED STATES ATTORNEY
JLK Federal Justice Building
99 Northeast 4th Street
Miami, FL 33132-2111

**Nicole Grosnoff**
U.S. ATTORNEY'S OFFICE
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

**Paul A. Hayden**
US DEPARTMENT OF JUSTICE
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, DC 20005

**Adam Louis Schwartz**
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131

**Lilly Ann Sanchez**
THE LS LAW FIRM
Four Seasons Tower
1441 Brickell Avenue
Suite 1200
Miami, FL 33131

**Luis Eduardo Delgado**
HOMER BONNER & DELGADO
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131

**Michael S. Pasano**
CARLTON FIELDS JORDEN BURT, P.A.
100 SE 2nd Street
Suite 4000, PO BOX 019101
Miami, FL 333131-9101

**David W. A. Chee**
100 SE Second Street
Suite 4200
Miami, FL 33131

**Marc David Seitles**
SEITLES & LITWIN, P.A.
Courthouse Center
40 N.W. 3rd Street
Penthouse One
Miami, FL 33128

**Michael John Wynne\***
GREGOR WYNNE PLLC
Two Houston Center
909 Fannin Street, Ste. 3800
Houston, Texas 77010

*Pro hac vice admission pending*